USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/12/17_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AMERICAN JEWISH COMMITTEE,                    :
                                              :
                            Plaintiff,        :
                                              :
        -v.-                                  :
                                              :
JAY BERMAN and TIME & SPACE MEDIA :
INC.,                                         :
                                              :
                            Defendants.       :
------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

15-CV-5983 (LAK) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

On November 3, 2015, the Court entered a default judgment in favor of

Plaintiff American Jewish Committee ("AJC") against Defendants Jay Berman

("Berman") and Time & Space Media, Inc. ("TSM") and thereafter referred this

matter to me to conduct an inquest into damages.  (Dkt. Nos. 20, 22).  By Report

and Recommendation dated June 15, 2016 (Dkt. No. 28) ("June 15 R&R"), I

recommended that the Court enter judgment for AJC against Berman and TSM in

the amount of $351,280 in compensatory damages for AJC's breach of contract claim

against Defendants, without prejudice to renewal of AJC's request for an additional

$124,820.90 in compensatory damages upon submission of sufficient documentation.

On August 27, 2016, the Court adopted the Report and Recommendation (Dkt. No.

29), and entered a Default Judgment on August 30, 2016 without prejudice to

renewal of AJC's request for the additional $124,820.90 in compensatory damages (Dkt. No. 30).[1]

By motion dated December 2, 2016 (Dkt. No. 33), AJC has now renewed its request for the additional $124,820.90 in compensatory damages and seeks entry of a final judgment awarding compensatory damages in this additional amount.[2]  AJC has submitted the affidavits of Marc Stern, AJC's general counsel (Dkt. No. 35) ("Stern Affidavit" or "Stern Aff."), and Kenneth Bandler, AJC's director of media relations (Dkt. No. 36) ("Bandler Affidavit" or "Bandler Aff."), in support of this further relief.  Familiarity with the Court's June 15th Report and Recommendation is assumed and it is incorporated by reference herein.

The Court believes that the submissions made by AJC in support of its renewed motion are adequate to warrant the award of the additional amount of $124,820.90 in compensatory damages.  This amount constitutes funds that AJC allegedly advanced to TSM for intended radio spots that never ran during the period from July 2015 through December 2015.  The Court had previously noted

---

[1] In the June 15 R&R, I mistakenly listed the amount as $124,920.90, rather than $124,820.90, and the Default Judgment included the incorrect amount.

[2] Because the Default Judgment by its terms provided for the possibility of an additional submission, and no time limit was set by which that submission had to be made, it appears that AJC's renewed motion is timely, even though judgment has already been entered.  While AJC did not invoke a particular rule pursuant to which its renewed motion was made, presumably because it considered the motion part of the Rule 55 default proceedings previously adjudicated, the Court could also construe the motion as one brought under Rule 60(b) seeking relief from a judgment and therefore timely because it was made within "a reasonable time," Fed. R. Civ. P. 60(c)(1), here less than four months from entry of judgment.

that in any further application to the Court AJC should submit any documentation

of demands from Westwood One that AJC pay for the radio spots scheduled after

June 2015, or any other records that Westwood One may have kept of AJC's failure

to pay for these spots. June 15 R&R at 19. The Court also directed AJC to account

for any discrepancies between records of debt to Westwood One and the

documentation of AJC's payments to TSM. *Id.*

In its renewed motion, while not submitting further documentation from

Westwood One (other than one invoice showing additional money AJC paid to run

radio spots in September 2015),[3] AJC provides evidence that (1) Berman had

informed AJC that making advanced payments to radio stations would save money,

including for spots on Westwood One in September and October 2015 (Stern Aff. ¶¶

5, 6; Bandler Aff. ¶ 8); (2) AJC had paid for radio spots through the end of 2015,

including the $124,820.90 paid to Defendants to purchase radio time on Westwood

One and two Florida stations (Stern Aff. ¶ 8; Bandler Aff. ¶ 11); and (3) the amount

of $124,820.90 is the approximate difference between the amount AJC had paid to

TSM for radio spots scheduled to be aired on Westwood One and two other stations

during part of 2014 and all of 2015 and the amount that AJC had paid to

Defendants for spots that Westwood One had already aired at the time AJC filed its

complaint in this lawsuit (Stern Aff. ¶ 9; Bandler Aff. ¶ 12).

---

[3] AJC does not explain in its motion papers why it did not otherwise provide
additional information from Westwood One.

3

AJC has also established that Defendants failed to make the required payments for the radio spots that correspond to the amount requested.  Specifically, AJC recounts the communications it had with Westwood One that demonstrate that Defendants had not passed along the money that AJC had paid for purpose of covering the radio spots between July and December 2015, and also that AJC itself had to pay directly for a couple of radio spots in September 2015 because Defendants had not paid for them on its behalf (Stern Aff. ¶¶ 10-19; Bandler Aff. ¶¶ 13-16).  AJC has also offered evidence that none of the amount in question was allocated for the payment of any radio spots or any other purpose, including correspondence from the two Florida radio stations on which it had previously aired its spots (Stern Aff. ¶ 20, & Exhibits 6 & 7; Bandler Aff. ¶¶ 17-21).

## CONCLUSION

Given AJC's additional submissions, I recommend that the Court grant the renewed motion and direct entry of final judgment awarding AJC an additional $124,820.90 in compensatory damages.

### PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New

4

York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Kaplan. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:　　　New York, New York
　　　　　　January 12, 2017

JAMES L. COTT
United States Magistrate Judge